**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| IN RE: | LAND LAPPER, INC., | : | Chapter 11 |
| | | : | |
| | Debtor | : | Bky. No. 14-18360 ELF |
| | | : | |

# O R D E R

**AND NOW**, upon consideration of the Motion to Dismiss Case ("the Motion") (Doc. # 98) filed by City of Philadelphia ("the City"), the Debtor's response thereto (Doc. # 103), the Debtor's most recently filed proposed chapter 11 plan of reorganization ("the Plan") (Doc. # 121) and the evidence introduced at the hearing held on **March 3, 2016**, it is hereby **ORDERED** that:

1. Subject to the conditions and provisions set forth below, the Motion is **DENIED WITHOUT PREJUDICE**.

2. **On or before April 22, 2016**, the Debtor shall pay the City all real estate taxes presently due and owing for tax year 2016.

3. Commencing **May 1, 2016**, the Debtor shall make monthly adequate protection payments to the City of **$1,500.00** until the effective date of the Plan (if confirmed).

4. In the event that the Debtor fails to make the payment required by Paragraph 2, upon certification of default filed with the court and served on the Debtor and the Debtor's counsel, the court may grant the Motion and dismiss this case, without a further hearing.

5. In the event that the Debtor fails to make any of the payments required by Paragraph 3 on or before their due dates, the City may give the Debtor and Debtor's counsel written notice of the default and if such default is not cured within fourteen (14) days after the service of the notice, upon certification of default filed with the court and served on the Debtor and the

Debtor' counsel, the court may grant the Motion and dismiss this case, without a further hearing.

6. This order is **WITHOUT PREJUDICE** to the City's right to renew its request that the Motion be granted in the event that the disclosure statement is not approved on **March 30, 2016**, the Plan is not confirmed at the first scheduled confirmation hearing or any other future event that causes or is reasonably likely to cause further delay in the confirmation of the Plan.

7. The Motion shall remain on the court's calendar effective the next hearing date: **March 30, 2016, at 11:00 a.m.**[1]

**Date: March 17, 2016**

　　　　　　　　　　　　　　　　　　**ERIC L. FRANK**
　　　　　　　　　　　　　　　　　　**CHIEF U.S. BANKRUPTCY JUDGE**

# **E N D N O T E   N O.   1**

1.      Under 11 U.S.C. §1112(b)(1), the legal standard for dismissal or conversion of a chapter 11 case is "cause."  In the Motion, the City articulates several grounds that it contends constitute cause for dismissal or conversion of this case.

**A.**

The City asserts that the case was not filed in good faith.   I am not persuaded by this argument.

Certainly, in some circumstances, a bankruptcy filing motivated by what may largely be a two-party dispute may be suggestive of a lack of good faith.  However, I do not consider that to be the case here.

The filing of the case appears to have been motivated by the Debtor's good faith belief that the City's secured tax claims are substantially overstated and that the bankruptcy filing could provide an appropriate dispute resolution process.  At the hearing, the Debtor's principal articulated a plausible theory for substantially reducing the secured tax claim held by the City.  Nothing in his testimony suggested that the filing was part of a long, drawn out dispute in which the bankruptcy filing was employed for a purely tactical advantage or just for the sake of further delay.

I accept the Debtor's contention that the filing was motivated by its belief that the chapter 11 process would facilitate resolution of the dispute between the Debtor and the City.  If it were otherwise, I would have expected the City to raise the bad faith filing argument much earlier in the proceeding.  Thus, the City's own conduct in the case suggests that the City perceived no lack of good faith in the bankruptcy filing.  Rather than filing a motion to dismiss shortly after the Debtor commenced the case, the City engaged in plan negotiations with the Debtor over many months.

**B.**

My perception of the Debtor's good faith in filing the case is tempered a bit by the slow pace in which case administration has proceeded.  This leads to the City's next argument: that there has been prejudicial delay warranting dismissal or conversion of the case.

Certainly there has been delay.  The case was filed in October 2014 and the Debtor did not file a disclosure statement in support of its proposed chapter 11 plan until November 2015.  However, having presided over the matter for its entire duration, I am satisfied that while the Debtor bears much of  the responsibility for what appears to be unnecessary delay, so too must the City.  The parties engaged in active negotiations regarding the substantive and procedural content of a consensual plan.  Those negotiations eventually resulted in an impasse.  Yet, the City took no formal action to contest the reorganization until January 2016, many months after the negotiations broke down.  In these circumstances, I consider dismissal or conversion too drastic a remedy for delays attributable to both parties.

**C.**

Next, the City contends that the case should be dismissed because the Debtor's proposed plan is patently unconfirmable because one of the Plan's key features – that the disputed tax liability can and should be determined promptly by the bankruptcy court pursuant to 11 U.S.C. §505(a)(1) rather than the appropriate municipal agency – is flawed.

According to the City, the Plan cannot be confirmed because the court either lacks jurisdiction or should abstain from exercising its authority under §505(a)(1). The City argues that the court lacks the power to make the tax determination under §505(a)(1) because there are few unsecured creditors and the only party to benefit from the tax determination are insiders. The City bases this argument on legislative history which suggests that at least one (1) principal purpose of §505(a)(1) is to protect creditors from dissipation of the estate's assets via an uncontested tax assessment. See, e.g., In re Altegrity, Inc., 544 B.R. 772, 778 (Bankr. D. Del. 2016).

The City has cited no case that supports this argument and I reject it as inconsistent with the plain language of §505(a)(1) which, in unqualified terms, grants tax determination authority to the bankruptcy court (subject only to the limitations in 11 U.S.C. §505(a)(2)). I note also that, in this case, there is at least one class of creditors that could benefit from a favorable redetermination of the Debtor's tax liability. Success in the proposed litigation against the City would enhance the lien priority of Class 3 (Alex and Lisa Spector) and reduce the risk that the Class 3 lien position would be divested in a tax sale. It is not obvious to me that use of §505(a)(1) to enhance the position of junior lien creditors, who thereby might support a plan of reorganization, is inconsistent with the purpose of §505(a)(1).
The City also overlooks that courts have recognized a second purpose to §505(a)(1), which is to permit a debtor to obtain a prompt resolution of a tax claim, which if left to another forum, could result in delaying the administration of the bankruptcy case. Altegrity, 544 B.R. at 778; In re Shapiro, 188 B.R. 140, 150 (Bankr. E.D. Pa. 1995) (per Fox, J.).

The City is perhaps on somewhat stronger footing in arguing that the bankruptcy court should abstain from hearing a §505(a)(1) proceeding. Abstention might well warrant dismissal or conversion of the case by defeating confirmation of the Debtor's proposed plan insofar as the Debtor appears to believe that a prompt resolution of the tax dispute in the bankruptcy court, if not essential, is an important element of the Plan. In the abstention context, the City contends that there is an insufficient bankruptcy purpose to warrant the court's exercise of its §505(a)(1) authority.

In evaluating whether to abstain from exercising its §505(a)(1) powers, a bankruptcy court should consider various factors:

> (1) the complexity of the tax issue;
>
> (2) the need to administer the bankruptcy case in an expeditious fashion;
>
> (3) the burden on the bankruptcy court's docket;
>
> (4) the length of time necessary to conduct the hearing and to render a decision thereafter;

   (5) the asset and liability structure of the debtor; and

   (6) the potential prejudice to the debtor, the taxing authority, and creditors.

E.g., In re New Haven Projects Ltd. Liab. Co., 225 F.3d 283, 289 (2d Cir. 2000) (per Sotomayor, J.).

  Interestingly, in New Haven Projects, the Second Circuit affirmed a bankruptcy court's decision to abstain, in large part because only one insider creditor would likely benefit from §505(a)(1) review, to the detriment of other creditors. In that respect, it provides some support for the City's position. However, the holding of New Haven Projects does not compel abstention in the instant case for three (3) reasons (other than the obvious one, which is that, as a decision from another Circuit, it is not binding on this court).

  First, the case holds only that a bankruptcy court does not abuse its discretion if it abstains when a proposed §505(a)(1) determination primarily will benefit an insider creditor. It does **not** hold that declining to abstain would be an abuse of discretion if other factors support the exercise of the court's jurisdiction.

  Second, it is distinguishable because the bankruptcy court in that case found that the sixth factor (prejudice) favored abstention. There is nothing in this case that suggests that the bankruptcy court's determination of the tax liability would be prejudicial to the City.

  Third, this case differs from New Haven Projects because the first four (4) factors outlined above support the exercise of this court's power under §505(a)(1).

### C.

  The City's final argument is that dismissal or conversion is appropriate because the Plan cannot be confirmed due to its lack of feasibility. See 11 U.S.C. §§1112(b)(4)(A), 1129(a)(11).

  At the hearing on the Motion, there was considerable testimony regarding the values of the various real estate parcels owned by the Debtor and their prospects for sale. I will not review all of that evidence at this time. Suffice it to say that the margin of economic viability of the the Plan is slim, especially if the Debtor is unsuccessful in substantially reducing the City's claim. However, while it is a close call, I conclude that the better course is to defer this issue to the confirmation hearing. At this juncture, I anticipate that the confirmation hearing will be held shortly, certainly within two (2) months of the entry of this order. Thus, the denial of the Motion is without prejudice to a plenary consideration at the confirmation hearing that the plan is not feasible, if the City chooses to raise that argument as an objection to confirmation of the Plan.

### D.

  Finally, I write further to provide the parties with some insight into the reasons for the conditions that I have imposed in denying the Motion without prejudice.

The City's opposition to the Debtor's reorganization efforts at this point centers largely on its view that the Debtor has already enjoyed a substantial period of time under the protection of the bankruptcy court during which the City has been unable to exercise its tax default collection remedies under applicable nonbankruptcy law and that a further period of protection while the Debtor seeks to liquidate certain assets is unreasonable. Given the delay in case administration, this argument has some force. At the same time, however, as stated earlier, the City has some responsibility for the situation in which it finds itself. Further, it is significant that the Debtor's plan has imposed a short deadline for the asset sale that is the key element of the Plan – the Plan provides that if the Debtor has not sold its main asset by September 30, 2016, this case will be dismissed immediately thereafter. In this respect, the Debtor has agreed to a very aggressive timetable.

In balancing the competing interests, I consider it equitable to condition the Debtor's request for additional time to continue its chapter 11 rehabilitation efforts (particularly in light of the borderline feasibility of the proposed plan) in two (2) ways. First, the Debtor must remain current on its 2016 postpetition obligations to the City. Any further delay in the City's right to enforce current obligations is unacceptable. That is the basis for Paragraph 2 of this Order. Second, due to its own lethargy in prosecuting this case, the Debtor must, in effect, "buy" the additional time it seeks, by beginning its performance under the proposed Plan even prior to confirmation. Hence, Paragraph 3 of this Order.